|    |    |
|----|----|
| PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS dba CHUKCHANSI GOLD RESORT & CASINO, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITE HERE LOCAL # 19,<br><br>Defendant. | No.  1:25-cv-00846-KES-SKO<br><br>ORDER REGARDING MOTION FOR TEMPORARY RESTRANING ORDER<br><br>Doc. 3 |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff Picayune Rancheria of Chukchansi Indians ("Tribe") dba Chukchansi Gold Resort & Casino, Inc. ("Chukchansi") brings a motion for temporary restraining order against defendant Unite Here Local #19 ("Union"), seeking to enjoin Union represented employees of Chukchansi from striking and from picketing at the entrances of Chukchansi.  The Tribe alleges that the Union's strike violates the Tribe's Tribal Labor Relations Ordinance ("TLRO") provisions that provide a right to strike only if collective bargaining negotiations have resulted in an "impasse," and that prohibit strike-related picketing on the Tribe's Indian lands.  Because the Tribe has not met its burden to demonstrate why this Court has jurisdiction to issue an injunction in a case "involving or growing out of a labor dispute," 29 U.S.C. § 101, the Court declines to grant the Tribe's motion at this time, and instead sets this matter for a hearing and sets a briefing schedule for the parties to adequately brief the matter.

1

**I.     Background**

The Tribe is a federally recognized Indian tribe and operates Chukchansi in Coarsegold, California.[1]  Doc. 2 ¶ 1.  Chukchansi employs members of the Union, which represents over 8,500 workers employed at hotels, restaurants, airports, sports arenas, and convention centers throughout Northern California.  *Id.* ¶ 2.  The Union represents roughly half of Chukchansi's employees.  *Id.*  According to the Tribe, negotiations between the Union and the Tribe were held on June 23, 2025 and July 1-2, 2025.  Doc. 3-2, Declaration of Adam P. Bailey, ¶ 12.  The parties remained divided over the extent of wage increases.  *Id.* ¶ 13–14.  Progress was made on some issues, but on July 2, the Union's representative halted negotiations due to a disagreement on Chukchansi's offer to increase wages.  *Id.* ¶ 15.  The Union threatened to strike beginning at 5:00 p.m. on July 3, should it not receive an offer on wages that the Union deemed acceptable by that time.  *Id.*  The Union did not ultimately go on strike on July 3.

The Tribe alleges that, on July 11, following Chukchansi's request that the Union provide a counteroffer as to wages, the Union indicated that it was available to continue negotiations on July 15, 16, or July 26-29, 2025.  *Id.* ¶ 19.  At 2:42 a.m. on July 12, 2025, the Union contacted Chukchansi and informed it that the Union's represented employees would go on strike at 3:00 a.m. that day, and that the strike would continue until midnight on July 15, 2025.  *Id.* ¶ 20.  The Tribe asserts that employees represented by the Union "walked out of work" at 3:00 a.m. on July 12.  *Id.* ¶ 21.  By 6:30 a.m. on July 12, approximately fifty employees began picketing at Chukchansi.  *Id.* ¶ 22.  The Tribe alleges that striking employees have gathered at the entrance to Chukchansi casino and hotel, at the team-member entrance along the side of the casino, and near the casino's shipping receiving entrance.  *Id.*  According to the Tribe, on July 12 it requested that the Union (1) cease its strike as the Tribe claimed the parties had not reached an impasse in negotiations, (2) cease strike-related protests on the Tribe's Indian lands, and (3) comply with the Tribe's ordinance requiring a prior application for permits and for public assemblies.  *Id.* ¶ 40.

---

[1] This background section sets forth allegations from the complaint, Doc. 2, and the declaration of Adam P. Bailey, counsel for the Tribe, Doc. 3-2, in support of the Tribe's motion for temporary restraining order.  Doc. 3.

1  The Tribe asserts that the Union did not respond to its request. *Id.* ¶ 41.

2  The Tribe's counsel indicates that, on July 13, he informed the Union's counsel via email of the Tribe's intention to seek a temporary restraining order and injunctive relief, and followed up thereafter with a call to the Union's office and left a voicemail with that information. *Id.* ¶ 42. On July 13, the Tribe filed a complaint for declaratory and injunctive relief, along with the present motion for temporary restraining order, seeking to enjoin the Union's strike. Docs. 2, 3.

## II. Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).[2]

## III. Discussion

Pursuant to the Norris-LaGuardia Act ("NLA"), federal courts generally lack jurisdiction to issue injunctions in cases involving labor disputes. *See* 29 U.S.C. § 101. "The Norris-LaGuardia Act ["NLA"] contains severe strictures against the issuance of injunctions in cases involving or growing out of labor disputes." *Matson Plastering Co., Inc. v. Operative Plasterers and Cement Masons Int'l Ass'n, AFL-CIO, Plasterers Local Union No. 295*, 633 F.2d 1307, 1308 (9th Cir. 1980). It provides that "[n]o court of the United States . . . shall have jurisdiction to

---

[2] The Tribe cites California state law in arguing the legal standard for the issuance of a temporary restraining order. *See* Doc. 3 at 23–26. The Federal standard applies on this motion.

1  issue any . . . temporary or permanent injunction in a case involving or growing out of a labor
2  dispute, except in strict conformity with the provisions of this Act." 29 U.S.C. § 101. Section
3  113(c) defines "labor dispute" to include "any controversy concerning terms or conditions of
4  employment" 29 U.S.C. § 113(c). Injunctions of labor strikes are the quintessential type of
5  "dispute" that the Norris-LaGuardia Act was intended to limit. *See Burlington N. Santa Fe Ry.*
6  *Co. v. Int'l Bhd. of Teamsters Loc. 174*, 203 F.3d 703, 707–08 (9th Cir. 2000).

7  The Tribe's motion does not address the NLA, yet the Tribe seeks to have this Court
8  enjoin the ongoing strike. While there are limited exceptions to the NLA, *see, e.g., Matson*
9  *Plastering*, 633 F.2d at 1309 (affirming an exception to the NLA permitting a court to grant
10  injunctive relief against a strike "only if the arbitrator determined that [a] no-strike clause barred
11  the strike"), the Tribe does not argue any such exceptions.

12  Moreover, the TLRO that the Tribe seeks to enforce appears to contain a binding
13  arbitration provision. *See* Doc. 3-4 at 12–14. The Tribe does not address why its dispute over the
14  lawfulness of the strike, or the underlying disputes prompting the strike, is not subject to
15  arbitration under Section 13 of the TLRO. *See Unite Here Local 30 v. Sycuan Band of the*
16  *Kumeyaay Nation*, 35 F.4th 695 (9th Cir. 2022) (enforcing arbitration provision in a similar tribal
17  labor relations ordinance despite tribe's federal preemption argument).

18  Additionally, the Tribe has failed to establish that it will suffer irreparable harm if not
19  granted extraordinary relief at this time. According to the Tribe, the current strike began in the
20  early morning hours of July 12, 2025 and is set to end at "midnight on July 15, 2025." Doc. 3-2
21  ¶ 20. While the Tribe asserts that the Union may resume the strike at a later date, the Tribe has
22  not established that it warrants an immediate injunction in this labor dispute without further
23  briefing by the parties.

24  **IV.     Conclusion and Order**

25  Accordingly, the Court declines to grant the Tribe's motion for temporary restraining
26  order. Instead, the Court sets a hearing and briefing schedule for the parties to brief the matter
27  more fully. A hearing is set on the Tribe's motion for temporary restraining order, Doc. 3, for
28  July 31, 2025 at 1:30 p.m. at the Robert E. Coyle Federal Courthouse in Courtroom 6 before

District Judge Kirk E. Sherriff.  The Union's opposition to the Tribe's motion shall be filed by July 23, 2025.  The Tribe's reply, if any, shall be filed by July 28, 2025.  The parties may stipulate to extend these deadlines.

The Tribe shall serve this Order on the Union within 24 hours of its entry and shall file a proof of such service on the docket.

IT IS SO ORDERED.

Dated:   July 14, 2025

UNITED STATES DISTRICT JUDGE